IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KRIS SARAYN KOLLYNS (FORMERLY #145461, A/K/A KRISTOPHER S. KOLLINS, A/K/A JOHN WAYNE TODD, A/K/A JOHNNIE W. TODD),<br><br>     Plaintiff,<br><br>vs.<br><br>DR. SELMAN WATSON (IN HIS PERSONAL CAPACITY);<br>MARTHA WILLIAMS (IN HER PERSONAL CAPACITY);<br>SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH; AND<br>SOUTH CAROLINA DEPARTMENT OF CORRECTIONS,<br><br>     Defendants. | Civil Action No. 3:05-2401-JFA-JRM<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

  Plaintiff filed this action under 42 U.S.C. § 1983 on August 15, 2005.[1] He has been involuntarily committed to the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina Sexually Violent Predator Act ("SVP Act"), S.C. Code Ann. § 44-48-10 et seq. Plaintiff is in the Behavioral Disorders Treatment Program ("BDTP"). Plaintiff filed a motion for summary judgment on December 8, 2005. Defendants filed a response on January 30, 2006, and Plaintiff filed a reply on February 13, 2006. Defendants filed a motion to dismiss[2] on March 30, 2006.[3] Because Plaintiff is proceeding pro se,

---

  [1]This action was originally brought by three persons civilly committed to the custody of the South Carolina Department of Mental Health. On August 26, 2005, the undersigned directed that separate civil action numbers be assigned to each plaintiff's case.

  [2]Defendants state they rely on the record in this case, including previously filed affidavits.
(continued...)

he was advised on April 10, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion could result in the dismissal of his complaint. Plaintiff filed a response on April 10, 2006.

## MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, who states that he is a member of the Wiccan religion, claims that he is not allowed to practice his individual Wiccan religious beliefs; the Wiccan program adopted by the SCDMH does not conform to his individual beliefs; and another BDTP resident threatened and assaulted him because of his beliefs. Plaintiff contends that his motion for summary judgment should be granted because Defendants violated existing SCDC and interagency (SCDMH and SCDC) policies and allowed another inmate to attack him.[4] Defendants contend that they are entitled to summary judgment because: (1) Plaintiff fails to show that his First Amendment rights were violated; (2) the BDTP resident who allegedly threatened and assaulted Plaintiff is not a person acting under the color of state law; (3) when informed of the alleged threat, SCDMH performed an investigation into Plaintiff's claims and found no concrete evidence to support the allegations; and (4) Defendant

---

[2](...continued)
As matters outside the pleadings have been considered, the undersigned has treated this as a motion for summary judgment.

[3]Plaintiff states that he objects to the lateness of Defendant' motion. The scheduling order, however, provides that the deadline for dispositive motions was March 31, 2006. See Scheduling Order (Doc. 21).

[4]Allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

Williams met with those allegedly involved with the threat and no further incidents occurred after the meeting.

1. First Amendment Claims

Plaintiff alleges that his First Amendment rights to free speech,[5] free exercise of religion, and separation of church and state have been harmed because SCDMH requires him to take the South Carolina Department of Corrections ("SCDC") Official Wiccan Course, follow SCDC's version of Wicca, and buy the official SCDC Wiccan book if he wishes to say that he is a Wiccan. He also claims that the BDTP does not have any Wiccan religious services or classes.[6] Defendants contend that Plaintiff has not shown that his exercise of religion has been substantially burdened by their regulations and even if he could show that it has been substantially burdened, Defendants have compelling interests of safety and security and have used the least restrictive means necessary to further those compelling interests.

In Youngberg v. Romeo, 457 U.S. 307 (1982), the Supreme Court of the United States held that the Fourteenth Amendment of the United States Constitution determines the rights of individuals who have been involuntary committed to a facility. Id. at 312. Although residents at

---

[5] Plaintiff has not alleged how his right of free speech has been violated.

[6] Plaintiff also appears to allege that BDTP residents other than Christians are denied access to religious services and classes. To the extent that Plaintiff is attempting to assert claims for any other residents, his claims fail. See Laird v. Tatum, 408 U.S. 1 (1972). See also Valley Forge Christian College v. Americans United for Separation of Church & State, 454 U.S. 464, 482 (1982); Flast v. Cohen, 392 U.S. 83, 99 (1968)(a district court, when determining whether a plaintiff has standing to sue, must focus on the status of the party who has filed the complaint, such that the merits of the case are irrelevant); Lake Carriers Ass'n v. MacMullan, 406 U.S. 498, 506 (1972); and Hummer v. Dalton, 657 F.2d 621, 625-626 (4th Cir. 1981)(a prisoner cannot act as a "knight-errant" for others). Cf. Oxendine v. Williams, 509 F.2d 1405, 1407 & n. * (4th Cir. 1975)(a pro se prisoner cannot be an advocate for others in a class action); and McNeil v. Guthrie, 945 F.2d 1163, 1164 & nn. 1-2 (10th Cir. 1991).

state institutions do have constitutionally protected interests, these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 321.

Inmates clearly retain their First Amendment right to free exercise of religion in prison, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). In Turner v. Safley, 482 U.S. 78 (1987), the Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. Id. at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. Id. Although the Fourth Circuit has not addressed the issue, other courts have applied Turner in analyzing constitutional claims by civilly committed SVPs. See Thompson v. Vilsack, 328 F.Supp.2d 974 (S.D. Iowa 2004)(applying Turner to claim that co-payment for Kosher meals violated civilly committed sexual predator's First Amendment rights); Rivera v. Rogers, 2006 WL 1455789 (D.N.J. May 22, 2006)(applying Turner in analyzing claims of SVPs that opening of their packages violated their First Amendment rights); Willis v. Smith, 2005 WL 550528 (N.D. Iowa Feb. 28, 2005)(noting that status of SVPs was substantially similar to that of prisoners and applying Turner to SVP claims concerning mail handling procedures); Gilmore v. Kansas, 2004 WL 2203458 (D.Kan. Sept. 27, 2004)(noting Turner standard in regard to claims of denial of razors, lighters, electricity, use of a washer and dryer, and freedom to move about the facility); see also Hydrick v. Hunter, 449 F.3d 978 (9th Cir. 2006)("As is the case with prisoners, civilly committed persons certainly retain those First Amendment rights not inherently inconsistent with the circumstances of their detention.").

Under Turner, courts must consider:

1) whether there is a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it,"

> 2) "whether there are alternative means of exercising the right that remain open to prison inmates,"
>
> 3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and
>
> 4) the "absence of ready alternatives."

Turner, 482 U.S. at 89-90. "Implicit in the Turner approach is the principle that the four-factor analysis applies only after it is determined that the policy impinges on a first amendment right." Ali v. Dixon, 912 F.2d 86, 89 (4th Cir. 1990).

Assuming, for the purposes of summary judgment, that the SCDMH religious policies impinge on Plaintiff's constitutional rights, he fails to show that the SCDMH regulations concerning group worship violate his First Amendment rights. Defendants have articulated a legitimate governmental interest in regulating group worship, security at the institution. Although Plaintiff is civilly committed and not a prisoner, Defendants provide that the SVP unit houses a group of adjudged sexually violent predators who are statutorily defined as dangerous and that one of the primary concerns is preventing assaults on other residents. They provide that to maintain the security and safety of the residents, the movement of residents has to be strictly monitored and group meetings kept to an essential minimum. Plaintiff has the alternative means of worshiping in his own room. Williams states that the SVP unit has only a maximum of three officers at any given time to control 70 residents such that group worship is designed to contain the main tenants of a faith group and is not based on individual precepts. As an example, she states that only one service is held for Protestants, instead of separate services for Presbyterians, Methodists, and Baptists. Williams states that there are five residents who practice the Wiccan faith and to accommodate them, the SCDMH adopted a program created by a High Priestess of the Wiccan faith and reviewed by two Wiccan

5

members, who confirmed that the program incorporated the beliefs and practices of the main body of Wicca. She also states that any resident of the BDTP is welcome to peruse her copy of the Wiccan Study Handbook and the fee for the handbook is waived for anyone of the Wiccan faith who wishes to have a copy. Williams Aff. Plaintiff admits that he attended a Wiccan class on August 5, 2005. Plaintiff's December 1, 2005 Aff. (Attachment to Plaintiff's Motion for Summary Judgment).

Plaintiff appears to claim that he should be allowed to conduct Wiccan services at the BDTP and have other inmates follow Wiccan materials developed by him. Prison administrators, however, are not under an affirmative duty to provide each inmate with the spiritual counselor of his choice. See Allen v. Toombs, 827 F.2d 563, 569 (9th Cir. 1987). Additionally, Plaintiff cannot show that his First Amendment rights have been violated based on SCDMH's failure to find Wiccan volunteers to conduct services or classes at the BDTP. In Young v. Thompson, 992 F.2d 1221 (9th Cir. 1993)[Table], a member of the Morman faith (who was civilly committed pursuant to Washington State's Sexually Violent Predators Act) alleged that his constitutional rights were violated because he was denied Morman religious services. The commitment facility's chaplain submitted an affidavit in which she stated that she had made the arrangements for Young to adequately practice his faith, but had found no religious volunteers from the Morman faith to conduct services. The Ninth Circuit found that Young's constitutional rights had not been violated, as the facility had met its burden in providing Young an opportunity to practice his religion. Young v. Thompson, 992 F.2d at *3.

Plaintiff's claim that any SCDMH Wiccan program violates the establishment clause[7] also fails. No SCDMH official has required Plaintiff to follow SCDMH's Wiccan or any other religious program. He may follow the Wiccan program provided or he may worship individually in his own room.

2.     Failure to Protect

Plaintiff alleges that for two days leading up to a July 30, 2005 meeting (concerning the Wiccan's needs) between Plaintiff, Defendant Williams, Defendant Watson, and other Wiccan BDTP residents, resident Timothy Farmer ("Farmer") physically assaulted him and another BDTP resident by slamming them into walls and shoving them. He claims that these actions were reported to Watson and Williams at the July 30, 2005 meeting, but they refused to take action to protect him. Plaintiff claims that the next night Farmer told resident Frank Cooper ("Cooper") that the other Wiccans were "Dead Men."[8] On August 1, 2005, Williams had a meeting about the alleged physical attacks and death threat. Plaintiff states that Farmer was not punished, that Williams denied that the physical attacks had been reported at the meeting, and nothing was done to stop abuses by Farmer. Complaint at 5-6. Defendants contend that Farmer is not a person acting under color of state law

---

[7]The Establishment Clause provides, "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. Although applicable originally only against the federal government, the Establishment Clause has been incorporated against the states by the Fourteenth Amendment. Everson v. Bd. of Educ., 330 U.S. 1, 8 (1947).

[8]In support of this, Plaintiff submitted a statement from Cooper in which Cooper states that on July 30, 2005, Farmer said he would not give Cooper some books which belonged to BDTP resident Jonathan Francis because he (Farmer) "did not talk to dead people." It is unclear from the affidavit whether "dead people" refers to Cooper or Francis, but there is no indication that the statement referred to Plaintiff. See Cooper statement (attachment to Plaintiff's motion for summary judgment).

7

for purposes of 42 U.S.C. § 1983;[9] (2) SCDMH performed an investigation into alleged threats by Farmer, but found no evidence to support the truthfulness of the allegations; and (3) Williams met with all involved to discuss any problems, after which no further incidents occurred.

The Fourth Circuit has not addressed the standard to apply in analyzing failure to protect claims by a civilly committed SVP. It appears, however, that the standard applicable to SVPs is at least coextensive with that applicable to prisoners under the Eighth Amendment. See Hydrick, 449 F.3d at 998; see also Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir.2001) (applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims of civilly committed patient).[10]

---

[9]Plaintiff has not shown that Farmer, another BDTP resident, is a "state actor" under § 1983. The "under color of state law" element of a § 1983 claim requires that "the conduct allegedly causing the deprivation of [a plaintiff's rights] be fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Additionally, Farmer has not been named a defendant in this action.

[10]Further guidance can be found in examining the standards applied to pretrial detainees. Allegations of deprivations of pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The dimensions of a pretrial detainee's Due Process rights have not been definitely determined by either the Supreme Court or the Fourth Circuit. City of Revere v. Massachusetts Gen. Hosp. 463 U.S. 239, 244 (1983); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980); see also Westmoreland v. Brown, 883 F. Supp. 67 (E.D.Va. 1995). However, "mere negligence" by prison officials is not sufficient to trigger the substantive due process protection of the Fourteenth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Daniels v. Williams, 474 U.S. 327, 330-32 (1986). It appears, however, that the "deliberate indifference" standard, as used in Eighth Amendment cruel and unusual punishment cases, should be applied to cases brought under the Fourteenth Amendment's Due Process clause. Because both the Fourteenth Amendment's Due Process clause and the Eighth Amendment address the permissibility of punishment, decisions addressing the dimensions of the Eighth Amendment's prohibition of cruel and unusual punishment provides guidance for analysis under the Due Process clause in several respects. First, the due process rights of a pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere, 463 U.S. at 244. Second, cases decided under the Eighth Amendment have addressed the

(continued...)

Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states an Eighth Amendment claim. <u>Pressly v. Hutto</u>, 816 F.2d 977, 979 (4th Cir. 1987). Not every injury suffered by one inmate at the hands of other inmates, however, translates into constitutional liability for the prison officials responsible for the victim's safety. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 835 (1994). In <u>Farmer</u>, the Supreme Court defined deliberate indifference, holding that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u>, at 847. The test is not whether an official knew or should have known of the possibility of harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u>, at 837. While the objective information known to the official may be used to infer the knowledge he actually had, and to draw inferences about his actual state of mind, those inferences are not conclusive. Further, the Eighth Amendment is not violated by the negligent

---

[10](...continued)
meaning of the term "punishment" which forms the core of the protection afforded by both the Eighth and Fourteenth Amendments. <u>See</u>, e.g., <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994); <u>Martin v. Gentile</u>, 849 F.2d 863, 871 (4th Cir. 1988) (inquiry as to whether officials are deliberately indifferent to serious medical needs is the same under the Due Process of the Fourteenth Amendment and the cruel and unusual punishments of the Eighth Amendment). Third, in defining conduct that gives rise to liability under § 1983, the evolving standard has been "deliberate indifference." <u>See</u>, e.g., <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1441, 1443 (9th Cir. 1991)("The requirement of conduct that amounts to 'deliberate indifference' provides an appropriate balance of the pretrial detainees' right not to be punished with the deference given to prison officials to manage the prisons"), <u>cert. denied</u>, 502 U.S. 1074 (1992). Thus, it appears that a plaintiff's Fourteenth Amendment claim should examined under the deliberate indifference standard as set out in the Eighth Amendment claim cases discussed below. <u>See</u>, e.g., <u>Ervin v. Magnum</u>, 127 F.3d 1099, 1997 WL 664606 (4th Cir. 1997)[Table].

failure to protect inmates from violence. Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991), cert. denied, 502 U.S. 828 (1991); Pressly, supra.

Plaintiff fails to show that Defendants were deliberately indifferent to a substantial risk of serious harm. In his Complaint, he does not allege that any assaults occurred after he talked with Watson and Williams.[11] Williams states that SCDMH performed an investigation into claims that Plaintiff was threatened by Farmer, yet found no concrete evidence to support the truthfulness of the allegations, she met with all involved to discuss any problems, and no further incidents have occurred. Williams Aff. Further, in his Complaint, Plaintiff did not claim any injuries from Farmer's alleged attacks. In his statement attached to his Motion for Summary Judgment, Plaintiff for the first time alleges that his body was bruised for a week after the alleged attack. There is no indication, however, that his injuries were anything more than de minimis. Plaintiff has not alleged that he sought any medical care after the alleged assault(s),even though he met with BDTP staff to complain about alleged attack(s) on the day an attack allegedly occurred and the next day. A merely de minimis injury is not indicative of a violation of Plaintiff's constitutional rights. See Ingraham v. Wright, 430 U.S. 651, 674 (1977)("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); see also Bell v. Wolfish, 441 U.S. 520, 539 n. 21 (1979).

Additionally, to the extent that Plaintiff is attempting to assert any claim for emotional distress because of the alleged threat by Farmer, his claim fails. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there

---

[11]In his Complaint, Plaintiff alleges that he told Defendants about the alleged attacks and threats after they occurred. In his motion for summary judgment, however, he appears to change his account such that he was assaulted by Farmer again after he reported the alleged incidents. Even if he was attacked after he spoke with Watson and Williams, he fails to establish a claim for the reasons discussed below.

is no liability under § 1983 regarding such claims.  See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989).  The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[12]

42 U.S.C. § 1997e(e).

   3.   Qualified Immunity

Defendants Watson and Williams argue that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific

---

[12] The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

>     conduct being challenged."  Moreover, "the manner in which this [clearly
>     established] right applies to the actions of the official must also be apparent."
>     As such, if there is a "legitimate question" as to whether an official's conduct
>     constitutes a constitutional violation, the official is entitled to qualified
>     immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995).  As discussed above, Plaintiff fails to show that Defendants Watson and Williams violated any of his clearly established constitutional or statutory rights.  Therefore, Defendants Watson and Williams are entitled to qualified immunity in their individual capacities.

## MOTION TO STRIKE

On March 2, 2006, Defendants filed a motion to strike, pursuant to Federal Rules 12(f) and 56(e), the SCDMH BDTP community minutes of October 22, 2004 and September 9, 2005 (collectively the "Minutes") that were attached to Plaintiff's February 13, 2006 reply.  Defendants contend that the Minutes are redundant, immaterial, and impertinent; the majority of the information is immaterial and irrelevant to the subject matter of this action; the information on the Wiccan religion is unclear, hearsay, and contextually vague; and there is no information as to the identity of some of the speakers or their position in this case.  Defendants also contend that the unsigned minutes do not conform to the requirements of Rule 56(e); the September 9, 2005 minutes do not list the transcriber; the facts consist mainly of hearsay to which no hearsay exception applies; and the documents contain numerous errors and gaps.

Plaintiff did not respond to the motion to strike. The Minutes are unsigned, the September 9, 2005 minutes do not list the transcriber, and it is unclear the identity and positions of some of the speakers. It is, therefore, recommended that Defendants' motion to strike be granted.[13]

## CONCLUSION

Based on review of the record, it is recommended that Plaintiff's motion for summary judgment (Doc. 14) be denied; Defendants' motion to strike (Doc. 23) be granted; and Defendants' motion for summary judgment (Doc. 27) be granted.

>Respectfully submitted,
>
>s/Joseph R. McCrorey
>United States Magistrate Judge

August 8, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[13] Even if the Minutes are considered, they do not create a genuine issue of material fact and do not change the undersigned's recommendation as to the motions for summary judgment.

<u>Notice of Right to File Objections to Magistrate Judge's Report and Recommendation</u>
<u>&</u>
<u>The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. <u>Advance Coating Technology, Inc. v. LEP Chemical, Ltd.</u>, 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See <u>Mathews v. Weber</u>, 423 U.S. 261, 270-271 (1976); and <u>Estrada v. Witkowski</u>, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> <u>thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See <u>United States v. Schronce</u>, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, <u>Schronce v. United States</u>, 467 U.S. 1208 (1984); and <u>Wright v. Collins</u>, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508-509 (6th Cir. 1991). See also <u>Praylow v. Martin</u>, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In <u>Howard</u>, <u>supra</u>, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* <u>Lockert v. Faulkner</u>, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also <u>Branch v. Martin</u>, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and <u>Goney v. Clark</u>, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See <u>Wright</u>, <u>supra</u>,; and <u>Small v. Secretary of HHS</u>, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201